UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK FAGUNDES,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY BERRYHILL,[1]<br><br>    Defendant. | Case No.16-cv-03462-JST<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 14, 19 |

Plaintiff Patrick Fagundes appeals Defendant Social Security Commissioner Nancy Berryhill's final decision denying his application for disability insurance benefits. Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 19. The matter is deemed fully briefed and submitted without oral argument pursuant to Civil Local Rule 16-5. The Court will deny Fagundes's motion and grant the Commissioner's cross-motion.

**I.    BACKGROUND**

Plaintiff Patrick Fagundes is a resident of Brisbane, California. Administrative Record ("AR") 253. He was born on May 16, 1970, and claims he became disabled on March 30, 2009, based on stage 3 chronic obstructive pulmonary disorder ("COPD"), seizures, depression, and alcohol abuse disorder. AR 252, 285.

Fagundes applied for Supplemental Security Income ("SSI") disability benefits and Supplemental Security Income Disability Insurance ("SSDI") on June 20, 2012. AR 252-64. The Commissioner denied his application on February 15, 2013, AR 159, and denied his request for reconsideration on October 18, 2013, AR 171. Fagundes appealed the denial and appeared before Administrative Law Judge ("ALJ") Judson Scott for a hearing on December 10, 2014. AR 22.

---

[1] Acting Social Security Commissioner Nancy Berryhill is substituted for Carolyn Colvin as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

The ALJ denied Fagundes's appeal on January 26, 2015. AR 19-32.

In making his disability determination, the ALJ followed the five-step process set out by the Social Security Act.[2] First, the ALJ found that Fagundes had not engaged in substantial gainful activity since March 30, 2009. AR 25. Second, the ALJ found that Fagundes suffered from COPD, personality disorder, mood disorder, posttraumatic stress disorder ("PTSD"), and alcohol abuse disorder, and that these impairments were severe. Id. Third, the ALJ found that Fagundes's impairments met the criteria for Listings 12.08 (Personality Disorders) and 12.09 (Substance Addiction Disorders) included in the regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 26. As required by 20 C.F.R. § 404.1535, the ALJ further found that if Fagundes stopped his substance use, he would continue to have a severe impairment or combination of impairments, but that he would not meet any Listings for disabilities and would have the residual functional capacity to perform a full range of work at all exertional levels with some non-exertional limitations. AR 27-31. Fourth, the ALJ found that Fagundes would be unable to perform his past relevant work. AR 31. Fifth, the ALJ found that even though Fagundes could not complete his past work, there would be a significant number of jobs in the national economy that Fagundes could perform. AR 31-32. The ALJ ultimately found that, "[b]ecause the substance use disorder is a contributing factor material to the determination of disability, [Fagundes] has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision." AR 32.

Fagundes filed a request for review of the ALJ decision, but the Appeals Council denied his request on April 29, 2016. AR 1-3. On June 21, 2016, Fagundes filed his appeal before this Court, asking that the ALJ's decision be set aside and the case remanded for another hearing. ECF

---

[2] Social Security regulations set out a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The process is sequential, meaning that if a claimant is found to be either disabled or not disabled at any step, there is no need to consider subsequent steps. Id. The five steps are: (1) "Is the claimant presently working in a substantially gainful activity?"; (2) "Is the claimant's impairment severe?"; (3) "Does the impairment 'meet or equal' one of a list of specific impairments described in the regulations?"; (4) "Is the claimant able to do any work that he or she has done in the past?"; and (5) "Is the claimant able to do any other work? . . . . If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do." Id. at 1098-99.

2

1  No. 1. The parties have filed cross-motions for summary judgment. ECF Nos. 14, 19.

2  Of relevance to the parties' current dispute, the ALJ heard testimony from Dr. Daniel Wiseman, a pulmonologist who reviewed the record as a medical expert but did not personally examine Fagundes.[3] When the ALJ asked Dr. Wiseman if there was a "pulmonary function test" in the record, Dr. Wiseman replied, "I couldn't find any, no." AR 44. But the record did contain an arterial blood gas test from Fagundes's June 21, 2012 hospital admission, as well as the results of an office spirometry. AR 362, 384. The ALJ did not ask Dr. Wiseman about either of these tests, nor did he mention the arterial blood gas test in his decision. Fagundes contends that the ALJ's decision was therefore erroneous and not supported by substantial evidence.

## II. LEGAL STANDARD

A district court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g).

"The Court may set aside a denial of benefits only if [it is] not supported by substantial evidence in the record or if it is based on legal error." Merrill ex rel. Merrill v. Apfel, 224 F.3d 1083, 1084-85 (9th Cir. 2000). The court "review[s] the administrative record in its entirety to decide whether substantial evidence to support the ALJ's decision exists, weighing evidence that supports and evidence that detracts from the ALJ's determination." Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995). It is "more than a scintilla but less than a preponderance." Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). "Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ." Drouin, 966 F.2d at 1258. "[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." Jamerson, 112 F.3d at 1067.

---

[3] The hearing transcript identifies the expert as "Dr. Weisman." AR 42. The Court uses "Dr. Wiseman," as the ALJ used throughout his decision. E.g., AR 22, 29-30.

3

In evaluating a disability claim, the ALJ must "consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about [the claimant's] symptoms." 20 C.F.R. §§ 404.1529 (a), 416.929 (a). "[T]he ALJ must develop the record and interpret the medical evidence," Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003), and is responsible for determining credibility, resolving conflicts in medical testimony, and resolving all other ambiguities, Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). However, the ALJ need not "discuss every piece of evidence" and, in particular, "is not required to discuss evidence that is neither significant or probative." Id.; see also Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (noting that "[a]n ALJ must explain why he has rejected uncontroverted medical evidence" but finding no error where the ALJ failed to discuss a psychiatric diagnosis that was controverted by other medical evidence).

Moreover, even if the ALJ erred, any error "is harmless where it is inconsequential to the ultimate nondisability determination. In other words, in each case we look at the record as a whole to determine whether the error alters the outcome of the case." Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations and internal quotation marks omitted). Thus, for example, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).

## III. DISCUSSION

Fagundes argues that the ALJ erred by failing to cite the arterial blood gas test and by failing to discuss that test or Fagundes's spirometry results with Dr. Wiseman at the hearing. He contends that a reasonable ALJ considering these two test results might have reached a different disability determination, and that the ALJ's decision is not supported by substantial evidence. The Court disagrees.

The ALJ considered Fagundes's spirometry results, but he concluded that the results were

4

outweighed by Fagundes's x-ray studies: "The claimant had significant obstruction upon spirometry testing, but x-ray studies of his chest revealed clear lungs and no acute focal abnormality (Exhibit 5F/4, 7F6, 26, 10F/8)." AR 27. The record contains an October 1, 2012 note stating, "office spirometry performed which showed significant obstruction and no reversibility with albuterol." AR 384. But the record also contains notes that a June 12, 2013 chest x-ray was "normal," AR 399, and showed that "[t]he lungs are clear without evidence of acute pleural or parenchymal disease," AR 419. The record further contains notes from August 16, 2013, that Fagundes's "[l]ungs are clear," and from December 2, 2013, that "[t]he lungs are clear and without focal consolidation, pneumothorax or pleural effusion." AR 524. The ALJ's discounting of Fagundes's spirometry results is therefore supported by substantial evidence, and the Court finds no legal error in the manner in which the ALJ considered Fagundes's spirometry results.

Fagundes correctly notes that the ALJ's decision contains no mention of the "abnormal" results from Fagundes's June 2012 arterial blood gas test: a pCO2 value of 47.1, when the normal range is 35-45 mm(hg), and a PO2 value of 67, when the normal range is 80-105 mm (hg). AR 362. However, one of the State agency physicians who reviewed Fagundes's case described these results as not "bad":

> [Fagundes] clearly has some degree of Chronic lung disease – he does have periodic exacerbations during which he wheezes and coughs more than usual and needs brief hospitalization. When he was in-patient at SFGH in June 2012 with an [exacerbation] of chronic lung dx, he was slightly hypoxemic, p02 65 and slightly hypercarbic, pC02 47 – but neither of these is bad.

AR 130. In addition, although Dr. Wiseman testified that he did not know of any pulmonary function tests, he did reference the June 2012 "significant" hospital admission – at which time Fagundes was given the arterial blood gas test – and described Fagundes as having had "borderline respiratory failure" at that time. AR 43. Dr. Wiseman further noted that Fagundes's respiratory problems were a "constant part of the record." Id. Nonetheless, he concluded that Fagundes's problems were primarily behavioral, and that his asthma and COPD symptoms would not prevent him from engaging in physical activity. AR 43-45. Dr. Wiseman opined that Fagundes could work with limited restrictions related to environmental respiratory agitators such as dusts, gases,

5

and fumes.[4] AR 47.

The ALJ gave "great weight" to the opinions of Dr. Wiseman and a psychiatric expert, Dr. Herbert Tanenhaus, "because they had the opportunity to review the record, hear claimant's testimony, and they are familiar with the disability program." AR 30. The ALJ also gave "significant weight" to the opinion of Dr. John Maris, a psychologist who examined Fagundes. Id. Like Dr. Wiseman, Drs. Tanenhaus and Maris opined that Fagundes was able to work – specifically, that he could "perform 1-2 step simple repetitive tasks" and "interact with others and maintain a work schedule." AR 29-30. Fagundes does not challenge either of these opinions.

In addition, the ALJ reviewed Fagundes's treatment notes and reasoned that, "[w]hile the claimant had episodes of COPD exacerbation, his condition quickly resolved with medication, which suggests that he did not use inhalers as prescribed. (Exhibit 1F, 4F) The claimant has received limited and conservative treatment and he continues to smoke." AR 29 (citing two of Fagundes's medical records). The ALJ concluded that "the record indicates that medication controls the claimant's COPD." AR 30. Although Fagundes testified that he was unable to work, AR 28, the ALJ concluded that "[n]umerous factors undermine [his] credibility concerning his reported symptoms and limitations," AR 30. The ALJ further observed that "no treating source has completed a medical source statement that endorses the extent of the claimant's alleged functional limitations or that suggests functional limitations more restrictive than the residual functional capacity found in this decision." Id.

The arterial blood gas test and spirometry results do not undermine any of the ALJ's conclusions. Fagundes points to no evidence that his COPD could not be controlled with treatment or that he lacked the residual functional capacity found by the ALJ. Moreover, although Fagundes makes much of Dr. Wiseman's comments that he wished the record included more evidence, AR 51, Dr. Wiseman was still comfortable making a determination that Fagundes could work based on his review of the entire record. For instance, Dr. Wiseman opined that Fagundes's

---

[4] Two State agency physicians reached similar conclusions concerning Fagundes's ability to work, AR 107-10, 134-39, but the ALJ gave those opinions "little weight because the record does not support their determination that the claimant has severe epilepsy and nonsevere mental health impairments." AR 30.

6

history of getting into fights shows that, in terms of level of exertion, he also had the ability to work. AR 43-47. He further testified that, "most of the time [Fagundes is] able to pretty much carry out anything he wants to do," with only "intermittent" positional limitations, "if any," AR 48, and that "what we do know is that this is a man that is leading an active life, who is not having the intermittent difficulties, which are the evidence of chronic and advanced pulmonary disease, who could have much of this pulmonary problem improved significantly if he were to be to stay on a regimen[] but there is no regimen." AR 51.

In light of all of the above, the Court concludes that substantial evidence supported the ALJ's decision. Additionally, the ALJ did not commit legal error by failing to discuss the arterial blood gas test results in his decision because that test was not significant or probative when considering the entire record.

Even if the ALJ did err, any error was harmless. Fagundes relies on Stout, 454 F.3d 1050, to argue that the ALJ's failure to consider the arterial blood gas testing was not harmless, but that case is distinguishable. In Stout, the ALJ failed to consider "uncontradicted lay testimony . . . about Stout's inability to deal with the demands of work" that was "consistent with medical evidence." Id. at 1053. The Ninth Circuit held that the error was not harmless because, "[i]f fully credited, the lay testimony supports a conclusion that Stout's mental impairments render him in need of a special working environment which, particularly when considering the [vocational expert's] testimony, a reasonable ALJ could find precludes Stout from returning to gainful employment." Id. at 1056. Here, by contrast, fully crediting the arterial blood gas test results would not lead any reasonable ALJ to reach a different conclusion. All of the medical opinions agreed that Fagundes's respiratory issues would not impede his ability to work. AR 99-110 (Dr. Greene's assessment); AR 124-39 (Dr. Coleman's assessment); AR 43-47 (Dr. Wiseman's assessment). One physician explicitly characterized the test results as "*slightly* hypoxemic" and "*slightly* hypercarbic," and that "neither of these is bad." AR 130 (emphases added). The record contains no evidence to the contrary – i.e., that Fagundes's arterial blood gas values would support additional limitations on his residual functional capacity. This Court can therefore "confidently conclude that no reasonable ALJ, when fully crediting [the test results], could have reached a

7

different disability determination." Stout, 454 F.3d at 1056.  Thus, any error was harmless.

## CONCLUSION

The ALJ's decision is affirmed.  The Court denies Fagundes's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.  The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated:  November 17, 2017

_____
JON S. TIGAR
United States District Judge